T. NELSON DOWNS, Administrator, Appellee, v. S. R. ROBINSON, Appellant.

INSURANCE: Evidence as to Assignment of Policy. Evidence held insufficient to show that a policy of insurance had been assigned, especially in view of the equivocal pleadings by the alleged assignee, and in view of the fact that the insured *always paid the premiums.*

*Appeal from Marshall District Court.*—B. F. CUMMINGS, Judge.

DECEMBER 13, 1921.

REHEARING DENIED MARCH 17, 1922.

ACTION to recover the proceeds of a life insurance policy. Judgment and decree for plaintiff. Defendant, Robinson, appeals.—*Affirmed.*

*Will C. Rayburn,* for appellant.

*J. M. Whitaker,* for appellee.

STEVENS, J.—Plaintiff, T. Nelson Downs, is the administrator of the estate of Estelle Mary Stickler, who died May 15, 1919. In November, 1909, she took out a policy upon her life in the Prudential Insurance Company of America for $500, payable to her mother, Mary Elizabeth Stickler, in the event she survived

the insured; otherwise, to her estate. The beneficiary named predeceased the insured. Plaintiff brought this action against the insurance company and S. R. Robinson, who had possession of the policy at the time of the death of the insured. The insurer, by permission of court and the agreement of the parties, paid $446.85, the full amount due on the policy, to the clerk of the district court of Marshall County, and plaintiff dismissed its cause of action against the company. The defendant, Robinson, appellant herein, filed answer to plaintiff's petition, alleging that the insured, in December, 1912, assigned the policy to him as collateral security for indebtedness then due him, which he alleged has not been paid. Later, appellant withdrew this allegation from his answer, and set up the defense that the policy was assigned to him for a valuable consideration, and that he was the absolute owner thereof.

The court below found in favor of the plaintiff, ordered the money paid into court by the insurer to be turned over to plaintiff, and taxed the costs to the appellant.

The evidence upon both sides is fragmentary, and not very conclusive or convincing. We are compelled to base our decision quite largely upon such inference as may be drawn from rather remote circumstances. The record discloses, however, without conflict, that the policy was turned over to appellant by the insured in December, 1912, accompanied by a letter addressed to the insurer as follows:

"Prudential Insurance Co.
    "Gentlemen:
        "I wish to assign my life insurance for $500 on policy No. 1128839 carried by your company to S. R. Robinson of Grinnell, Iowa. This policy is now made out in favor of my mother, Mary Elizabeth Stickler.
                        "Yours truly,
                                "E. M. Stickler."

The evidence further discloses that, on December 19, 1912, insured wrote appellant a letter, advising him that she must in some way raise $223.44, for the purpose of taking up past due indebtedness to the Marshalltown Savings & Loan Association,

which held a mortgage upon the home of insured for $1,000, and for the purpose of extending the loan, and to prevent a foreclosure of the mortgage held by the company; that, on December 31, 1912, appellant forwarded a check from Grinnell, Iowa, to the Marshalltown Savings & Loan Association, payable to its order, for $223.44; that the insured, some time prior to April 19, 1910, engaged in the coal business in Marshalltown, purchasing her stock from the appellant; that she, from time to time, became indebted to him in some amount, and gave him notes as follows: April 19, 1910, $1,500; July 5, 1910, $1,000; December 1, 1910, two notes, one for $800 and one for $700. It further appears that, on April 19, 1910, she executed a mortgage to Robinson upon her residence property in Marshalltown, to secure the payment of the $1,500 note executed on that date; that, at the time of the execution of the mortgage to appellant, the prior mortgage of $1,000 to the Marshalltown Savings & Loan Association was unpaid; that, some time in 1913, appellant commenced a suit in equity upon the above notes, and to foreclose the mortgage held by him; that later, a stipulation was entered into between the parties, and a supplemental decree based thereon was filed and entered of record in the clerk's office. The insured, in her answer to the petition of plaintiff in the foreclosure suit, who is appellant herein, denied that she was indebted to him in the sum of $4,000, and averred that he had promised and agreed to pay the mortgage to the loan association, but had not done so, and that she was not indebted to him in any amount in excess of $1,000, and prayed for an accounting. The supplemental decree, based upon the stipulation of the parties, provided among other things that:

"Plaintiff's claim and demand is established against the defendant in the sum of four thousand ($4,000) dollars, the same being evidenced by Exhibits A, B, C, and D, offered in evidence, the same being the full amount of defendant's debt to the plaintiff; and the said debt, and any claim of plaintiff against defendant, is canceled and paid by the further provisions of this decree."

At the time the supplemental decree was entered, appellant also held a mortgage upon the household goods of the insured. The supplemental decree further provided that the mortgage

upon the household goods should be relinquished and canceled; that the defendant in said suit would execute a deed conveying the mortgaged premises to appellant, subject to her right to occupy the same for a period of one year. It was stipulated upon the trial of this case in the court below that the insured paid all the premiums that came due on the policy after it was turned over to the appellant.

The only witness examined upon the trial was appellant, who testified that the policy and the letter to the insurance company quoted supra, and the letter of the insured apparently seeking a loan of $223.44, came into his possession in December, 1912, and that he forwarded his check for that sum to the Savings & Loan Association. The original check was offered in evidence.

It is the claim of appellee that all of the indebtedness owed by the insured to appellant was settled and canceled at the time and by the provisions of the supplemental decree.

It will be observed that appellant alleged, in his original answer to plaintiff's petition in this action, that the policy was assigned to him as security for certain indebtedness which the insured was owing him, and that this allegation was later withdrawn, and a plea of absolute ownership substituted. No written assignment of the policy to appellant is shown, the appellant relying upon the letter to the insurance company which we have already quoted. This letter does not purport to assign the policy to appellant, but does inform the insurer that she desires to make such assignment. It was delivered with the policy to appellant, and may have been treated by the parties as an assignment thereof. It will, therefore, be observed that appellant does not now claim a lien upon the proceeds of the policy in the hands of the court because of the alleged assignment or delivery of the policy to him, but that he is the absolute owner of it.

We think it may fairly be assumed that the policy was delivered to appellant as a part of the transaction out of which the payment by appellant of $223.44 to the Marshalltown Savings & Loan Association arose. As already stated, the beneficiary named in the policy was the mother of the insured, who predeceased her, but who was living in December, 1912. It is not shown by the portions of the policy set out in the record

that a change of beneficiary was authorized by its terms. Unless some provision was made therein for a change of beneficiary, the beneficiary named acquired a vested interest in the policy. *Haerther v. Mohr*, 114 Iowa 636; *Townsend v. Fidelity & Cas. Co. of New York*, 163 Iowa 713; *Hicks v. Northwestern Mut. L. Ins. Co.*, 166 Iowa 532; *Condon v. New York Life Ins. Co.*, 183 Iowa 658.

The fact that appellant, in his answer filed September 2, 1919, set up that the policy was transferred to and held by him as collateral security for unpaid indebtedness of the insured, and that, on December 26, 1919, he withdrew this plea from his answer, and substituted a plea of absolute ownership, cannot be entirely ignored. He must have known, at the time the original answer was filed, by what right he held possession of the policy, as well as later, when he changed his defense from an alleged lien upon the money to a claim of ownership thereof. No explanation was offered, and no other evidence of debt than the check and other documents referred to was introduced. It is also important to note that at least the pleadings show that there was a substantial controversy between appellant and the defendant in the suit to foreclose the mortgage as to the amount of indebtedness due him, and that, while the amount advanced by appellant to the Savings & Loan Association is not mentioned in the stipulation or in the decree, it does appear therefrom, as a fair and reasonable inference, that the parties sought and intended thereby to effect a complete settlement and adjustment of all differences between them. The decree specifically provides:

"And the said debt and any claim of plaintiff against defendant is canceled and paid by further provisions of this decree."

The insured paid all premiums that came due after the policy was delivered to the appellant. It is hardly probable that she would have kept up the policy for the benefit of appellant if she had assigned the same to him in consideration of the amount paid the Savings & Loan Association, which was less than half the value of the policy at the time the settlement was had with the insurance company and the proceeds paid to the clerk.

The lien of the mortgage of the Savings & Loan Association

was prior to that of appellant upon the same property. The $223.44 was paid by appellant to the Loan Association nearly two years after he received the mortgage from Miss Stickler. The value of the property conveyed to appellant in conformity with the terms of the supplemental decree is not disclosed by the record. The fact that the insured continued to pay the premiums that came due on the policy after it was delivered to appellant is a strong circumstance against his claim that the assignment was for a valuable consideration, and for the purpose of transferring title to the proceeds of the policy. It must also be given weight in considering the fact that the policy was in appellant's possession when the death of the insured occurred. If he did not own it outright, no explanation of his possession of the policy is found in the record. This is the only claim asserted by him. This claim is wholly inconsistent with the payment of premiums by the insured after the claimed assignment of the policy.

It is our opinion that the provisions of the supplemental decree were treated by the parties as not only an adjudication of all matters involved in the litigation, but also as a settlement and receipt for all indebtedness of the defendant to the appellant. The record is not as convincing as we would like it to be, but we are persuaded that a preponderance of the evidence favors the claims of appellee. It follows that the judgment must be and is—*Affirmed.*

EVANS, C. J., ARTHUR and FAVILLE, JJ., concur.